# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Richard J. Breibart, Respondent.

Appellate Case No. 2015-001982

Opinion No. 27592
Submitted November 4, 2015 – Filed November 25, 2015

## DISBARRED

Lesley M. Coggiola, Disciplinary Counsel, and C. Tex Davis, Jr., Senior Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Richard J. Breibart, of Lexington, *pro se*.

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to disbarment with conditions.  He requests the disbarment be imposed retroactively to June 1, 2012, the date of his interim suspension.  *In the Matter of Breibart*, 398 S.C. 123, 727 S.E.2d 740 (2012).  We accept the Agreement and disbar respondent from the practice of law in this state retroactively to the date of respondent's interim suspension.  We further impose the conditions as stated hereafter in this opinion.  The facts, as set forth in the Agreement, are as follows.

## Facts

### Matter I

From January 1, 1993 through December 31, 2003, respondent performed legal services for or rendered legal advice to Client A on more than one occasion and, as

a result, established an attorney/client relationship with Client A.  Respondent engaged in business transactions with and/or received loans from Client A on more than one occasion while he was respondent's client or a client of respondent's law practice.

## Matter II

Respondent self-reported that, from 1994 until 2002, he borrowed significant sums of monies from several clients.  He admits that some of the loans were not transmitted in writing  to the clients and/or the clients did not consent in writing to essential terms of the loan and respondent's role in the transaction.

## Matter III

In September 2012, respondent was indicted on ten (10) counts of mail fraud, extortion, and wire fraud.  Respondent was charged with devising a scheme whereby he obtained money and property from his clients by false and fraudulent pretenses.  The scheme with regard to some of respondent's clients was as follows: respondent would contact clients, former clients, or family members of former clients who had readily accessible money and inform them that the clients were in imminent danger of being arrested and/or of losing their money; he would instruct the clients or clients' family members to transfer large sums of money to him to be deposited in his trust account for safekeeping or to ensure that the investigation would be closed; he encouraged the clients or clients' family members to locate as much money as possible, including liquidating retirement accounts and asking family members for money; respondent would accept the funds from his clients or his clients' family members and convert those funds to pay for expenses and obligations relating to his law firm, to himself personally, and to other clients. There were never any civil actions or criminal investigations regarding the claims respondent made to his clients.

On August 12, 2013, respondent pled guilty to one count of mail fraud.  On March 4, 2014, respondent was sentenced to sixty-three (63) months in the custody of the United States Bureau of Prisons and to three (3) years of supervised release.  In addition, respondent was ordered to begin repayment of restitution of $2,419,326.50 in monthly payments of $100 sixty (60) days after his release from prison.

## Matter IV

Respondent represented Complainant's son on state criminal charges. Respondent informed Complainant that he might be the target of the Federal Bureau of Investigation in relation to the son's criminal charges and, that, in addition to potential criminal charges, Complainant might be exposed to potential civil liability. Respondent instructed Complainant to liquidate and transfer all available funds to respondent to be held in his trust account for safekeeping. Complainant transferred $393,526.29 to respondent pursuant to respondent's request. Respondent accepted the funds from Complainant and converted those funds to pay expenses and obligations relating to his law firm, to respondent personally, and to other clients. Respondent represents he was contacted by the United States Attorney's Office regarding the conduct of Complainant's son and/or other family members, however, there was no formal federal investigation. Complainant filed a claim with the Lawyers' Fund for Client Protection (Lawyers' Fund) and was awarded $9,546.08.

## Matter V

On or about October 2011, Client B retained respondent to represent him in a divorce action. At that time, respondent instructed Client B that his retainer fee would be $45,000. Respondent instructed Client B that it would also be in his best interests to transfer an additional $45,000 to respondent to make it more difficult for Client B's wife to find and obtain the proceeds during the divorce. Client B wired $90,000 to respondent. At the time of respondent's interim suspension, Client B's funds were gone and there was no accounting as to how the funds had been used by respondent. Client B had to secure new counsel to complete his divorce case. Client B did not file a claim with the Lawyers' Fund.

## Matter VI

On or about July 2011, Clients C retained respondent to represent them in a civil action to recover damages to their property. Clients C paid respondent a $15,000 retainer which was characterized in the retainer agreement as a "non-refundable" retainer. In or around December 2011, Clients C contacted respondent because they were not satisfied with the lack of communication and diligence from respondent. Clients C informed respondent that they wished to terminate the relationship and requested the return of any unearned legal fees and their client file. Respondent informed Clients C that, pursuant to the retainer agreement he had "set up the file" and that the $15,000 retainer had been earned. Respondent

informed Clients C that he could continue the representation or they could drop the case, but that, in either event, he was keeping the retainer fee. Clients C reluctantly elected to continue with the case. At the time of respondent's interim suspension, Clients C retrieved their client file from the Attorney to Protect Respondent's Clients' Interests. The client file consisted mostly of materials provided to respondent from Clients C. There was no correspondence by respondent or any documents from an alleged expert witness, as respondent had discussed with Clients C. Clients C filed a claim with the Lawyers' Fund and were awarded $1,1551.24.

## Matter VII

On May 12, 2011, Client D retained respondent to represent him in an action to recover misappropriated funds. Client D paid respondent a $10,000 retainer fee. In February 2012, respondent informed Client D that he was negotiating a settlement. In May 2012, Client D telephoned respondent on several occasions seeking an update about the status of his case. Respondent failed to return these calls. On June 1, 2012, respondent was placed on interim suspension. Complainant D retrieved his client file from the Attorney to Protect Respondent's Clients' Interests. The client file consisted of the retainer agreement, a copy of the cancelled retainer check, and one letter. The file did not contain any accounting of how the legal fees had been earned by respondent. Client D filed a claim with the Lawyers' Fund and was awarded $1,193.26.

## Matter VIII

Client E retained respondent on April 12, 2012, to represent him on pending criminal charges. As of May 2012, Client E had paid respondent $25,000 in legal fees. On June 1, 2012, respondent was placed on interim suspension. There were insufficient funds in respondent's trust account to return any unearned fees to Client E. Client E filed a claim with the Lawyers' Fund and was awarded $2,983.15.

## Matter VIX

On April 27, 2012, Client F retained respondent to represent her on pending criminal charges. Client F paid respondent $7,500 in legal fees. On June 1, 2012, respondent was placed on interim suspension. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client F. Client F filed a claim with the Lawyers' Fund and was awarded $724.90.

## Matter X

In June 2011, Complainant retained respondent to represent her son who had pending federal and state criminal charges. Complainant paid respondent $25,000 in legal fees to handle the case. Respondent assured Complainant that he would be able to consolidate both federal and state criminal charges.

Respondent appeared with Complainant's son in October 2011 for him to enter a plea to the state charges. Respondent informed his client that he would receive an eight (8) year sentence when, in fact, the client received a twelve (12) year sentence. Respondent failed to communicate with client after the plea. At the time of respondent's interim suspension, the client's federal charges were still pending.

Complainant filed a claim with the Lawyers' Fund and was awarded $1,193.26.

## Matter XI

Client G paid respondent $125,000 to represent him in various matters. On June 1, 2012, respondent was placed on interim suspension. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client G. Client G filed a complaint with the Lawyers' Fund. He was awarded $4,773.04.

## Matter XII

In December 2009, Client H retained respondent to represent her in a criminal matter. Client H paid respondent $7,500 in legal fees. Client H's case was unresolved at the time of respondent's interim suspension on June 1, 2012. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client H. Client H filed a claim with the Lawyers' Fund and was awarded $417.64.

## Matter XIII

In July 2011, Client I retained respondent to handle a child custody modification case. Client I paid respondent $7,500 in legal fees. On June 1, 2012, respondent was placed on interim suspension. At that time, Client I's case was still unresolved. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client I. Client I filed a claim with the Lawyers' Fund and was awarded $447.47.

## Matter XIV

Client J retained respondent in June 2009 to represent him in two disability actions against Liberty Mutual and Wells Fargo and paid respondent $25,000 in legal fees. In October 2009, respondent informed Client J that he needed an additional $15,000 in legal fees. Respondent had Client J execute an Agreement in which respondent guaranteed that the $15,000 would be refunded to Client J regardless of the result of the cases. Both cases were resolved by the end of March 2010. On June 1, 2012, respondent was placed on interim suspension. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client J. Client J filed a claim with the Lawyers' Fund and was awarded $4,057.08.

## Matter XV

On April 7, 2011, Client K retained respondent to represent her in a custody matter and paid respondent $7,500 in legal fees. Client K's case was still unresolved when respondent was placed on interim suspension on June 1, 2012. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client K. Client K filed a claim with the Lawyers' Fund and was awarded $447.47.

## Matter XVI

In early 2009, Client L had retained respondent to handle a domestic matter. In early 2011, Client L met with respondent to discuss another matter regarding her husband. Respondent convinced Client L that her husband was involved in a tax evasion scheme and that Client L needed to set up a trust account for the benefit of her four children. Client L transferred $130,000 from her money market account to respondent's trust account. In fact, Client L's husband was not being investigated for any criminal scheme.

On June 1, 2012, respondent was placed on interim suspension. There were insufficient funds in respondent's trust account to return any monies to Client L. Client L filed a claim with the Lawyers' Fund and was awarded $4,773.04.

## Matter XVII

In May 2009, Client M retained respondent to represent her in a civil matter. Client M paid respondent $40,000 in legal fees. On June 1, 2012, respondent was placed on interim suspension. At that time, Client M's case was still unresolved. There were insufficient funds in respondent's trust account to return any unearned

legal fees to Client M.  Client M filed a claim with the Lawyers' Fund and was awarded $3,221.80.

## Matter XVIII

In November 2010, Client N retained respondent to set up a conservatorship for his son who was due to be released from prison.   On November 30, 2010, Client N transferred $125,000 to respondent's trust account to fund the conservatorship. Respondent informed Client N that he would file the appropriate documents with the Probate Court to establish the conservatorship.

In May 2011, Client N's son was released from prison.  Client N's son died in June 2011.  At the time, respondent had not set up the conservatorship.  Client N requested respondent return the $125,000.  Respondent rebuffed Client N's request and told him he would release the funds after the probate of the son's estate.

In August 2011, Client N sold his home. At the closing, Client N learned that the Department of Justice held a $17,500 lien on the property relating to the son. Respondent instructed Client N to deposit $27,000 into his trust account and that he would work to resolve the lien.  Client N transferred $27,000 into respondent's trust account.  As months passed, respondent failed to keep Client N apprised of his progress on both matters.

On June 1, 2012, respondent was placed on interim suspension.  There were insufficient funds in respondent's trust account to return any unearned legal fees to Client N.  Client N filed a claim with the Lawyers' Fund and was awarded $4,773.04.

## Matter XIX

Client O retained respondent for a domestic matter and paid respondent a $5,000 retainer fee.  On June 1, 2012, respondent was placed on interim suspension. Client O's case was still unresolved.  There were insufficient funds in respondent's trust account to return any unearned legal fees to Client O.  Client O filed a claim with the Lawyers' Fund and was awarded $298.31.

## Matter XX

On March 31, 2012, Complainant retained respondent to represent her son in a criminal matter.  Complainant paid respondent $25,000.  Respondent went to Complainant's son's first hearing.  On June 1, 2012, respondent was placed on

interim suspension.  Complainant son's case was still unresolved.  There were insufficient funds in respondent's trust account to return any unearned legal fees to Complainant.  Complainant filed a claim with the Lawyers' Fund and was awarded $2,386.52.

## Matter XXI

On May 15, 2012, Client P retained respondent to represent him on a charge of Public Disorderly Conduct.  Client P paid a $5,200 retainer fee to respondent.  On June 1, 2012, respondent was placed on interim suspension.  Client P's case was unresolved at the time of respondent's suspension.  There were insufficient funds in respondent's trust account to return any unearned legal fees to Client P.  Client P had to retain another attorney to complete his case.  Client P filed a claim with the Lawyers' Fund and was awarded $596.63.

## Matter XXII

Client Q retained respondent to represent her on a criminal charge of Harassment in the 2nd degree and paid respondent a $7,500 retainer fee.  Respondent failed to handle Client Q's case in a diligent manner.

On June 1, 2012, respondent was placed on interim suspension.  Client Q's case was unresolved at the time of respondent's suspension.  There were insufficient funds in respondent's trust account to return any unearned legal fees to Client Q.  Client Q had to retain another attorney to complete her case.  Client Q filed a claim with the Lawyers' Fund and was awarded $313.23.

## Matter XXIII

On April 16, 2012, Client R retained respondent to represent him on a criminal charge.  Client R paid respondent $8,974.14.  On the same date, respondent sent a letter to the court requesting a jury trial.

On June 1, 2012, respondent was placed on interim suspension.  Client R's case was unresolved at the time of respondent's suspension.  No other work than the jury trial request had been performed by respondent.  There were insufficient funds in respondent's trust account to return any unearned legal fees to Client R.  Client R had to retain another attorney to complete his case.  Client R filed a claim with the Lawyers' Fund and was awarded $856.76.

## Matter XXIV

Client S retained respondent on May 18, 2011, to represent him in a domestic matter and paid respondent a $5,000 retainer fee. On October 13, 2011, respondent made a court appearance on Client S's behalf.

On June 1, 2012, respondent was placed on interim suspension. Client S's case was unresolved at the time of respondent's suspension. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client S. Client S filed a claim with the Lawyers' Fund and was awarded $298.31.

## Matter XXV

Complainant retained respondent to represent her juvenile son in a criminal matter. She paid a $25,000 retainer fee to respondent. Other than a few telephone calls, respondent performed little to no work on the case.

On June 1, 2012, respondent was placed on interim suspension. Complainant's son's case was unresolved at the time of respondent's suspension. Complainant had to borrow additional funds to hire another attorney. There were insufficient funds in respondent's trust account to return any unearned legal fees to Complainant. Complainant filed a claim with the Lawyers' Fund and was awarded $2,983.15.

## Matter XXVI

On April 3, 2012, Client T retained respondent to represent him in a domestic matter. Client T paid respondent a retainer of $500. On June 1, 2012, respondent was placed on interim suspension. Client T's case was unresolved at the time of respondent's suspension. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client T. Client T filed a claim with the Lawyers' Fund and was awarded $47.73.

## Matter XXVII

Client U retained respondent to represent her in connection with injuries suffered in an automobile accident. Respondent was able to negotiate a $23,000 settlement. Client U executed the necessary release and endorsed the settlement check in March 2012. The funds were deposited in respondent's trust account. On June 1, 2012, respondent was placed on interim suspension. There were insufficient funds

in respondent's trust account to return any settlement monies to Client U. Client U filed a claim with the Lawyers' Fund and was awarded $2,571.83.

## Matter XXVIII

In May 2010, Client V retained respondent to handle a criminal matter. Client V paid a $40,000 retainer fee to respondent. On June 1, 2012, respondent was placed on interim suspension. Client V's criminal matter was still pending at that time. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client V. Client V filed a claim with the Lawyers' Fund and was awarded $4,057.08.

## Matter XXIX

In September 2007, Client W retained respondent to handle civil litigation against his partners in SouthCable, LLC. Client W paid respondent an initial retainer fee of $25,000. Respondent later informed Client W that the South Financial Group was going to bring litigation against Client W. Client W paid respondent $100,000 to defend this alleged litigation. The litigation did not materialize. Over the years, Client W paid respondent an additional $134,000 for this matter. At the time of respondent's interim suspension on June 1, 2012, the SouthCable, LLC, matter had been tried and the court was waiting for a proposed order from the parties. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client W. Client W filed a claim with the Lawyers' Fund. Client W was awarded $4,773.04.

## Matter XXX

In March 2012, Client X retained respondent to handle a domestic matter. Client X paid respondent a $7,500 retainer fee. On June 1, 2012, respondent was placed on interim suspension. Client X's domestic matter was still pending at that time. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client X. Client X filed a claim with the Lawyers' Fund and was awarded $626.46.

## Matter XXXI

Client Y retained respondent in October 2011 to represent him against an allegation of child molestation. Client Y paid respondent a $25,000 retainer fee. On June 1, 2012, respondent was placed on interim suspension. Client Y's client file contained no evidence of any work completed by respondent. No criminal

charges were ever brought against Client Y. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client Y.

## Matter XXXII

In May 2011, Client Z retained respondent to represent him in a suit against Michelin North America, Inc. in an effort to remove his ex-wife from being a beneficiary for death benefits. Client Z paid respondent a $20,000 retainer fee. On June 1, 2012, respondent was placed on interim suspension. Client Z learned that very little work had been done on his case. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client Z. Client Z filed a claim with the Lawyers' Fund. Client Z was awarded $2,016.61.

## Matter XXXIII

Client AA retained respondent in July 2009 because of a concern about potential criminal charges. Client AA paid respondent a $7,500 retainer fee. Periodically, Client AA would call respondent to find out the status of the potential charges. Respondent would inform Client AA that he was "working" on the case. On June 1, 2012, respondent was placed on interim suspension. Client AA obtained his client filed from the Attorney to Protect Respondent's Clients' Interests. The only document in the file was a notation that respondent had reviewed the file in August 2011. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client AA. Client AA filed a claim with the Lawyers' Fund and was awarded $894.94.

## Matter XXXIV

On March 6, 2012, Client BB retained respondent for a child support modification case. Client BB paid respondent a $5,250 retainer fee. On June 1, 2012, respondent was placed on interim suspension. Client BB's domestic matter was still pending at that time. There were insufficient funds in respondent's trust account to return any unearned legal fees to Client BB. Client BB filed a claim with the Lawyers' Fund. Client BB was awarded $544.36.

## Matter XXXV

Client CC retained respondent in early 2009 to represent him on drug-related criminal charges. Client CC paid respondent a $20,000 retainer fee. On March 4, 2010, Client CC pled guilty to Trafficking in Cocaine, more than twenty-eight (28) grams. Client CC only pled guilty because of misrepresentations made by

respondent. Specifically, respondent told Client CC that a suppression motion had been filed and denied by the court. This was untrue. In addition, respondent did not allow Client CC to cooperate with law enforcement officials. Client CC's cooperation could have resulted in a reduced sentence. On September 24, 2013, Client CC's Application for Post-Conviction Relief was granted based on respondent's misrepresentations.

## Matter XXXVI

Client DD retained respondent to handle various legal matters for him and his businesses. Over the years, respondent held substantial monies in trust for Client DD. At the time of his interim suspension, respondent should have held $236,500 in trust for Client DD. Respondent admits that Client DD's monies were misappropriated by him to pay for expenses and obligations related to his law firm, to himself personally, and to other clients. There were insufficient funds in respondent's trust account to return any monies to Client DD. Client DD filed a claim with the Lawyers' Fund and was awarded $4,773.04.[1]

## **Claims Awarded and Paid by the Lawyers' Fund**

According to the Agreement for Discipline by Consent, the Lawyers' Fund received claims totaling $5,606,281.33 against respondent and approved awards in the amount of $1,676,081.96. Due to the cap on payments, the Lawyers' Fund paid a total of $200,000.07 to the claimants, most of whom only received a small percentage of the amount approved.[2]

## **Law**

Respondent admits that by his conduct he violated the following provisions of the Rules of Professional Conduct (RPC) contained in Rule 407 of the South Carolina Appellate Court Rules (SCACR): Rule 1.1 (lawyer shall provide competent representation); Rule 1.2 (lawyer shall abide by client's decisions regarding

---

[1] Not all instances of client misconduct are necessarily identified in this opinion; instances of misconduct are addressed in the Plea Agreement and Judgment in a Criminal Case which are attached to the Agreement for Discipline by Consent and are matters of public record.

[2] *See* Rule 411(c) (1), SCACR (payment to any claimant by Lawyers' Fund shall not exceed sum of $40,000 per claim; provided, however, that the aggregate total of claims paid per attorney shall not exceed $200,000).

objectives of representation); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.4 (lawyer shall reasonably consult with client about means by which client's objectives are to be accomplished, keep client reasonably informed about status of matter, and promptly comply with reasonable requests for information); Rule 1.5 (lawyer shall not make agreement for, charge, or collect unreasonable fee or unreasonable amount for expenses); Rule 1.8 (lawyer shall not enter into business transaction with client or knowingly acquire pecuniary interest adverse to client unless transaction and terms on which lawyer acquires interest are fair and reasonable to client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by client, client is advised in writing of desirability of seeking and is given reasonable opportunity to seek advice of independent legal counsel on transaction, and client gives informed consent, in a writing signed by client, to essential terms of transaction and lawyer's role in the transaction, including whether lawyer is representing client in transaction); Rule 1.15 (lawyer shall hold property of clients or third persons in lawyer's possession in connection with representation separate from lawyer's own property; lawyer shall deposit into client trust account unearned legal fees and expenses that have been paid in advance, to be withdrawn by lawyer only as fees are earned or expenses incurred, unless lawyer and client have entered into written agreement concerning handling of fees paid in advance pursuant to Rule 1.5(f), RPC; lawyer shall promptly deliver to client or third person any funds or other property client or third person entitled to receive); Rule 1.16 (upon termination of representation, lawyer shall refund any advance payment of fee or expense that has not been earned or incurred); Rule 3.4 (lawyer shall not falsify evidence); Rule 8.1 (in connection with disciplinary matter, lawyer shall not knowingly make false statement of material fact or fail to disclose fact necessary to correct misapprehension known by lawyer to have arisen in disciplinary matter, or knowingly fail to respond to lawful demand for information from disciplinary authority); Rule 8.4 (a) (it is professional misconduct for lawyer to violate Rules of Professional Conduct); Rule 8.4(b) (it is professional misconduct for lawyer to commit criminal act that reflects adversely on lawyer's honesty, trustworthiness or fitness as lawyer in other respects); Rule 8.4(c) (it is professional misconduct for lawyer to commit criminal act involving moral turpitude); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice). In addition, respondent admits his conduct violated the Lawyer's Oath contained in Rule 402(k),SCACR. Respondent further admits his conduct violated provisions of Rule 417, SCACR.

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR:  Rule 7(a)(1) (it is ground for discipline for lawyer to violate Rules of Professional Conduct) and Rule 7(a)(5) (it is ground for discipline for lawyer to engage in conduct tending to pollute administration of justice or bring courts or legal profession into disrepute or conduct demonstrating unfitness to practice law).

## Conclusion

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state, retroactively to June 1, 2012, the date of his interim suspension. *In the Matter of Breibart*, *supra*.  In addition, we impose the following conditions:

1. within thirty (30) days of the date of this opinion, respondent shall enter into a payment plan with the Commission on Lawyer Conduct (the Commission) to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission ($1,059.41) and to reimburse the Lawyers' Fund for all amounts paid to the claimants ($200,000.07); the payment plan shall consider respondent's ability to pay and all obligations are subject to the terms and conditions of prior judicial orders;

2. respondent shall not apply for readmission until he has completed all terms and conditions of his criminal sentence, including the payment of fines and restitution;[3]

3. respondent shall not apply for readmission until he has paid in full a) all parties whose claims approved by the Lawyers' Fund were only partially paid;[4] b) $90,000 to Client B who did not file a claim with the Lawyers' Fund and is not covered by the criminal restitution plan; and c) $25,000 to Client Y who did not file a claim with the Lawyers' Fund and is not covered by the criminal restitution plan; and

4. respondent shall complete the Trust Account School prior to applying for readmission.

---

[3] *See* Matter III.

[4] Payments to these parties may be offset by any amount paid by respondent through the criminal restitution plan.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**